(Slip Opinion) OCTOBER TERM, 2009 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## REED ELSEVIER, INC., ET AL. *v.* MUCHNICK ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

No. 08–103.   Argued October 7, 2009—Decided March 2, 2010

The Copyright Act (Act) generally requires copyright holders to register their works before suing for copyright infringement.  17 U. S. C. A. §411(a).  The complaint in this consolidated, class-action copyright infringement suit alleged that the named plaintiffs each own at least one copyright, typically in a freelance article written for a newspaper or magazine, that they had registered in accordance with §411(a). The class, however, included both authors who had registered their works and authors who had not.  The parties moved the District Court to certify a settlement class and approve a settlement agreement.  The District Court did so over the objections of some freelance authors.  On appeal, the Second Circuit *sua sponte* raised the question whether §411(a) deprives federal courts of subject-matter jurisdiction over infringement claims involving unregistered copyrights, concluding that the District Court lacked jurisdiction to certify the class or approve the settlement.

*Held:* Section 411(a)'s registration requirement is a precondition to filing a copyright infringement claim.  A copyright holder's failure to comply with that requirement does not restrict a federal court's subject-matter jurisdiction over infringement claims involving unregistered works.  Pp. 5–16.

  (a) "Jurisdiction" refers to "a court's adjudicatory authority," *Kontrick* v. *Ryan*, 540 U. S. 443, 455.  Thus, "jurisdictional" properly applies only to "prescriptions delineating the classes of cases (subject-matter jurisdiction) and the persons (personal jurisdiction)" implicating that authority.  *Ibid*.  Because the distinction between jurisdictional conditions and claim-processing rules can be confusing in practice, federal courts and litigants should use the term "jurisdictional" only when it is apposite.  *Ibid.*  A statutory requirement is considered

jurisdictional if Congress "clearly states that [it] count[s] as jurisdictional"; a condition "not rank[ed]" as such should be treated "as nonjurisdictional in character." *Arbaugh* v. *Y & H Corp.*, 546 U. S. 500, 515–516. In *Arbaugh,* the Court held that the employee-numerosity coverage requirement of Title VII of the Civil Rights Act of 1964 was not a jurisdictional requirement because the provision did not "clearly stat[e]" that the numerosity rule counted as jurisdictional, this Court's prior Title VII cases did not compel the conclusion that the rule nonetheless was jurisdictional, and the requirement's location in a provision separate from Title VII's jurisdiction-granting section indicated that Congress had not ranked the rule as jurisdictional. Pp. 5–7.

(b) Like the Title VII numerosity requirement in *Arbaugh*, §411(a) does not "clearly stat[e]" that its registration requirement is "jurisdictional." 546 U. S., at 515. Although §411(a)'s last sentence contains the word "jurisdiction," that sentence speaks to a court's adjudicatory authority to determine a copyright claim's registrability and says nothing about whether a federal court has subject-matter jurisdiction to adjudicate claims for infringement of unregistered works. Moreover, §411(a)'s registration requirement, like Title VII's employee-numerosity requirement, is located in a provision "separate" from those granting federal courts subject-matter jurisdiction over those respective claims, *ibid.,* and no other factor suggests that §411(a)'s registration requirement can be read to " 'speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts,' " *ibid.* This conclusion is not affected by the fact that the employee-numerosity requirement in *Arbaugh* was considered an element of a Title VII claim rather than a prerequisite to initiating a lawsuit. See *Zipes* v. *Trans World Airlines, Inc.*, 455 U. S. 385, 393. Pp. 7–11.

(c) A contrary result is not required by *Bowles* v. *Russell*, 551 U. S. 205. There, in finding that Congress had ranked as jurisdictional 28 U. S. C. §2107's requirement that parties in a civil action file a notice of appeal within 30 days of the judgment, this Court analyzed §2107's specific language and the historical treatment accorded to that type of limitation. That analysis is consistent with the *Arbaugh* framework because context is relevant to whether a statute "rank[s]" a requirement as jurisdictional. Pp. 11–14.

(d) The Court declines to apply judicial estoppel to affirm the Second Circuit's judgment vacating the settlement. While some of petitioners' arguments below are in tension with those made in this Court, accepting their arguments here does not create the type of "inconsistent court determinations" in their favor that estoppel is meant to address. See *New Hampshire* v. *Maine*, 532 U. S. 742. Pp. 14–15.

(e) Because §411(a) does not restrict a federal court's subject-

matter jurisdiction, this Court need not address the question whether the District Court had authority to approve the settlement under the Second Circuit's erroneous reading of §411. The Court also declines to decide whether §411(a)'s registration requirement is a mandatory precondition to suit that district courts may or should enforce *sua sponte* by dismissing copyright infringement claims involving unregistered works. Pp. 15–16.

509 F. 3d 116, reversed and remanded.

THOMAS, J., delivered the opinion of the Court, in which ROBERTS, C. J., and SCALIA, KENNEDY, and ALITO, JJ., joined. GINSBURG, J., filed an opinion concurring in part and concurring in the judgment, in which STEVENS and BREYER, JJ., joined. SOTOMAYOR, J., took no part in the consideration or decision of the case.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 08–103

REED ELSEVIER, INC., ET AL., PETITIONERS *v.* IRVIN MUCHNICK ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

[March 2, 2010]

JUSTICE THOMAS delivered the opinion of the Court.

Subject to certain exceptions, the Copyright Act (Act) requires copyright holders to register their works before suing for copyright infringement. 17 U. S. C. A. §411(a) (Supp. 2009). In this case, the Court of Appeals for the Second Circuit held that a copyright holder's failure to comply with §411(a)'s registration requirement deprives a federal court of jurisdiction to adjudicate his copyright infringement claim. We disagree. Section 411(a)'s registration requirement is a precondition to filing a claim that does not restrict a federal court's subject-matter jurisdiction.

I

A

The Constitution grants Congress the power "[t]o promote the Progress of Science and useful Arts, by securing for limited Times to Authors . . . the exclusive Right to . . . their . . . Writings." Art. I, §8, cl. 8. Exercising this power, Congress has crafted a comprehensive statutory scheme governing the existence and scope of "[c]opyright protection" for "original works of authorship fixed in any tangi-

ble medium of expression." 17 U. S. C. §102(a). This scheme gives copyright owners "the exclusive rights" (with specified statutory exceptions) to distribute, reproduce, or publicly perform their works. §106. "Anyone who violates any of the exclusive rights of the copyright owner as provided" in the Act "is an infringer of the copyright." §501(a). When such infringement occurs, a copyright owner "is entitled, *subject to the requirements of section 411*, to institute an action" for copyright infringement. §501(b) (emphasis added).

This case concerns "the requirements of section 411" to which §501(b) refers. Section 411(a) provides, *inter alia* and with certain exceptions, that "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title."[1] This provision is part of the Act's remedial scheme. It establishes a condition—copyright registration—that plaintiffs ordinarily must satisfy before filing an infringement claim and invoking the Act's remedial provisions. We address whether §411(a) also deprives federal courts of subject-matter jurisdiction to adjudicate infringement claims involving unregistered works.

B

The relevant proceedings in this case began after we issued our opinion in *New York Times Co.* v. *Tasini*, 533 U. S. 483 (2001). In *Tasini*, we agreed with the Court of Appeals for the Second Circuit that several owners of online databases and print publishers had infringed the copyrights of six freelance authors by reproducing the authors' works electronically without first securing their

_____

[1] Other sections of the Act—principally §§408–410—detail the registration process, and establish remedial incentives to encourage copyright holders to register their works, see, *e.g.,* §410(c); 17 U. S. C. A. §412 (2005 ed. and Supp. 2009).

permission. See *id.*, at 493. In so holding, we affirmed the principal theory of liability underlying copyright infringement suits that other freelance authors had filed after the Court of Appeals had issued its opinion in *Tasini*. These other suits, which were stayed pending our decision in *Tasini*, resumed after we issued our opinion and were consolidated in the United States District Court for the Southern District of New York by the Judicial Panel on Multidistrict Litigation.

The consolidated complaint alleged that the named plaintiffs each own at least one copyright, typically in a freelance article written for a newspaper or a magazine, that they had registered in accordance with §411(a). The class, however, included both authors who had registered their copyrighted works and authors who had not. See App. 94.

Because of the growing size and complexity of the lawsuit, the District Court referred the parties to mediation. For more than three years, the freelance authors, the publishers (and their insurers), and the electronic databases (and their insurers) negotiated. Finally, in March 2005, they reached a settlement agreement that the parties intended "to achieve a global peace in the publishing industry." *In re Literary Works in Electronic Databases Copyright Litigation*, 509 F. 3d 116, 119 (CA2 2007).

The parties moved the District Court to certify a class for settlement and to approve the settlement agreement. Ten freelance authors, including Irvin Muchnick (hereinafter Muchnick respondents), objected. The District Court overruled the objections; certified a settlement class of freelance authors under Federal Rules of Civil Procedure 23(a) and (b)(3); approved the settlement as fair, reasonable, and adequate under Rule 23(e); and entered final judgment. At no time did the Muchnick respondents or any other party urge the District Court to dismiss the case, or to refuse to certify the class or approve the settle-

ment, for lack of subject-matter jurisdiction.

The Muchnick respondents appealed, renewing their objections to the settlement on procedural and substantive grounds. Shortly before oral argument, the Court of Appeals *sua sponte* ordered briefing on the question whether §411(a) deprives federal courts of subject-matter jurisdiction over infringement claims involving unregistered copyrights. All parties filed briefs asserting that the District Court had subject-matter jurisdiction to approve the settlement agreement even though it included unregistered works.

Relying on two Circuit precedents holding that §411(a)'s registration requirement was jurisdictional, see 509 F. 3d, at 121 (citing *Well-Made Toy Mfg. Corp.* v. *Goffa Int'l Corp.*, 354 F. 3d 112, 114–115 (CA2 2003); *Morris* v. *Business Concepts, Inc.*, 259 F. 3d 65, 72–73 (CA2 2001)), the Court of Appeals concluded that the District Court lacked jurisdiction to certify a class of claims arising from the infringement of unregistered works, and also lacked jurisdiction to approve a settlement with respect to those claims, 509 F. 3d, at 121 (citing "widespread agreement among the circuits that section 411(a) is jurisdictional").[2]

Judge Walker dissented. He concluded "that §411(a) is more like the [nonjurisdictional] employee-numerosity requirement in *Arbaugh* [v. *Y & H Corp.*, 546 U. S. 500 (2006)]" than the jurisdictional statutory time limit in *Bowles* v. *Russell*, 551 U. S. 205 (2007). 509 F. 3d, at 129. Accordingly, he reasoned that §411(a)'s registration re-

—————

[2] See *La Resolana Architects, PA* v. *Clay Realtors Angel Fire,* 416 F. 3d 1195, 1200–1201 (CA10 2005); *Positive Black Talk Inc.* v. *Cash Money Records Inc.,* 394 F. 3d 357, 365 (CA5 2004); *Xoom, Inc.* v. *Imageline, Inc.,* 323 F. 3d 279, 283 (CA4 2003); *Murray Hill Publications, Inc.* v. *ABC Communications, Inc.,* 264 F. 3d 622, 630, and n. 1 (CA6 2001); *Brewer-Giorgio* v. *Producers Video, Inc.,* 216 F. 3d 1281, 1285 (CA11 2000); *Data Gen. Corp.* v. *Grumman Systems Support Corp.,* 36 F. 3d 1147, 1163 (CA1 1994).

quirement does not limit federal subject-matter jurisdiction over infringement suits involving unregistered works. *Ibid.*

We granted the owners' and publishers' petition for a writ of certiorari, and formulated the question presented to ask whether §411(a) restricts the subject-matter jurisdiction of the federal courts over copyright infringement actions. 555 U. S. \_\_\_\_ (2009). Because no party supports the Court of Appeals' jurisdictional holding, we appointed an *amicus curiae* to defend the Court of Appeals' judgment.[3] 556 U. S. \_\_\_\_ (2009). We now reverse.

## II

### A

"Jurisdiction" refers to "a court's adjudicatory authority." *Kontrick* v. *Ryan*, 540 U. S. 443, 455 (2004). Accordingly, the term "jurisdictional" properly applies only to "prescriptions delineating the classes of cases (subject-matter jurisdiction) and the persons (personal jurisdiction)" implicating that authority. *Ibid.;* see also *Steel Co.* v. *Citizens for Better Environment*, 523 U. S. 83, 89 (1998) ("subject-matter jurisdiction" refers to "the courts' statutory or constitutional *power* to adjudicate the case" (emphasis in original)); *Landgraf* v. *USI Film Products*, 511 U. S. 244, 274 (1994) ("[J]urisdictional statutes 'speak to the power of the court rather than to the rights or obligations of the parties'" (quoting *Republic Nat. Bank of Miami* v. *United States*, 506 U. S. 80, 100 (1992) (THOMAS, J., concurring))).

While perhaps clear in theory, the distinction between jurisdictional conditions and claim-processing rules can be confusing in practice. Courts—including this Court—have sometimes mischaracterized claim-processing rules or

---

[3] We appointed Deborah Jones Merritt to brief and argue the case, as *amicus curiae*, in support of the Court of Appeals' judgment. Ms. Merritt has ably discharged her assigned responsibilities.

elements of a cause of action as jurisdictional limitations, particularly when that characterization was not central to the case, and thus did not require close analysis. See *Arbaugh*, *supra*, at 511–512 (citing examples); *Steel Co.*, 523 U. S., at 91 (same). Our recent cases evince a marked desire to curtail such "drive-by jurisdictional rulings," *ibid.,* which too easily can miss the "critical difference[s]" between true jurisdictional conditions and nonjurisdictional limitations on causes of action, *Kontrick*, *supra*, at 456; see also *Arbaugh*, 546 U. S., at 511.

In light of the important distinctions between jurisdictional prescriptions and claim-processing rules, see, *e.g.*, *id.*, at 514, we have encouraged federal courts and litigants to "facilitat[e]" clarity by using the term "jurisdictional" only when it is apposite, *Kontrick*, *supra*, at 455. In *Arbaugh*, we described the general approach to distinguish "jurisdictional" conditions from claim-processing requirements or elements of a claim:

> "If the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional, then courts and litigants will be duly instructed and will not be left to wrestle with the issue. But when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character." 546 U. S., at 515–516 (citation and footnote omitted).

The plaintiff in *Arbaugh* brought a claim under Title VII of the Civil Rights Act of 1964, which makes it unlawful "for an employer . . . to discriminate," *inter alia*, on the basis of sex. 42 U. S. C. §2000e–2(a)(1). But employees can bring Title VII claims only against employers that have "fifteen or more employees." §2000e(b). *Arbaugh* addressed whether that employee numerosity requirement "affects federal-court subject-matter jurisdiction or, instead, delineates a substantive ingredient of a Title VII

claim for relief." 546 U. S., at 503. We held that it does the latter.

Our holding turned principally on our examination of the text of §2000e(b), the section in which Title VII's numerosity requirement appears. Section 2000e(b) does not "clearly stat[e]" that the employee numerosity threshold on Title VII's scope "count[s] as jurisdictional." *Id.*, at 515–516, and n. 11. And nothing in our prior Title VII cases compelled the conclusion that even though the numerosity requirement lacks a clear jurisdictional label, it nonetheless imposed a jurisdictional limit. See *id.*, at 511–513. Similarly, §2000e(b)'s text and structure did not demonstrate that Congress "rank[ed]" that requirement as jurisdictional. See *id.*, at 513–516. As we observed, the employee numerosity requirement is located in a provision "separate" from §2000e–5(f)(3), Title VII's jurisdiction-granting section, distinguishing it from the "amount-in-controversy threshold ingredient of subject-matter jurisdiction . . . in diversity-of-jurisdiction under 28 U. S. C. §1332." *Arbaugh*, 546 U. S., at 514–515. Accordingly, the numerosity requirement could not fairly be read to "'speak in jurisdictional terms or in any way refer to the jurisdiction of the district courts.'" *Id.,* at 515 (quoting *Zipes* v. *Trans World Airlines, Inc.*, 455 U. S. 385, 394 (1982)). We thus "refrain[ed] from" construing the numerosity requirement to "constric[t] §1331 or Title VII's jurisdictional provision." *Arbaugh, supra,* at 515 (internal quotation marks omitted).

We now apply this same approach to §411(a).

### B

Section 411(a) provides:

"Except for an action brought for a violation of the rights of the author under section 106A(a), and subject to the provisions of subsection (b), no civil action for infringement of the copyright in any United States

work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title. In any case, however, where the deposit, application, and fee required for registration have been delivered to the Copyright Office in proper form and registration has been refused, the applicant is entitled to institute a civil action for infringement if notice thereof, with a copy of the complaint, is served on the Register of Copyrights. The Register may, at his or her option, become a party to the action with respect to the issue of registrability of the copyright claim by entering an appearance within sixty days after such service, but the Register's failure to become a party shall not deprive the court of jurisdiction to determine that issue."

We must consider whether §411(a) "clearly states" that its registration requirement is "jurisdictional." *Arbaugh, supra*, at 515. It does not. *Amicus* disagrees, pointing to the presence of the word "jurisdiction" in the last sentence of §411(a) and contending that the use of the term there indicates the jurisdictional cast of §411(a)'s first sentence as well. Brief for Court-Appointed *Amicus Curiae* in support of Judgment Below 18 (hereinafter *Amicus* Brief). But this reference to "jurisdiction" cannot bear the weight that *amicus* places upon it. The sentence upon which *amicus* relies states:

"The Register [of Copyrights] may, at his or her option, become a party to the [copyright infringement] action with respect to *the issue of registrability of the copyright claim* by entering an appearance within sixty days after such service, but the Register's failure to become a party shall not deprive the court of jurisdiction to determine *that issue*." §411(a) (emphasis added).

Congress added this sentence to the Act in 1976, 90

Stat. 2583, to clarify that a federal court can determine "the issue of registrability of the copyright claim" even if the Register does not appear in the infringement suit. That clarification was necessary because courts had interpreted §411(a)'s precursor provision,[4] which imposed a similar registration requirement, as prohibiting copyright owners who had been *refused* registration by the Register of Copyrights from suing for infringement until the owners *first* sought mandamus against the Register. See *Vacheron & Constantin-Le Coultre Watches, Inc.* v. *Benrus Watch Co.*, 260 F. 2d 637, 640–641 (CA2 1958) (construing §411(a)'s precursor). The 1976 amendment made it clear that a federal court plainly has adjudicatory authority to determine "*that* issue," §411(a) (emphasis added)—*i.e.*, the issue of *registrability*—regardless of whether the Register is a party to the *infringement* suit. The word "jurisdiction," as used here, thus says nothing about whether a federal court has subject-matter jurisdiction to adjudicate claims for infringement of unregistered works.

Moreover, §411(a)'s registration requirement, like Title VII's numerosity requirement, is located in a provision "separate" from those granting federal courts subject-matter jurisdiction over those respective claims. See *Arbaugh*, *supra*, at 514–515. Federal district courts have subject-matter jurisdiction over copyright infringement actions based on 28 U. S. C. §§1331 and 1338. But neither §1331, which confers subject-matter jurisdiction over questions of federal law, nor §1338(a), which is specific to copyright claims, conditions its jurisdictional grant on whether copyright holders have registered their works before suing for infringement. Cf. *Arbaugh*, *supra,* at 515 ("Title VII's jurisdictional provision" does not "specif[y] any threshold ingredient akin to 28 U. S. C. §1332's monetary floor").

---

[4] See Act of Mar. 4, 1909, §12, 35 Stat. 1078.

Nor does any other factor suggest that 17 U. S. C. A. §411(a)'s registration requirement can be read to "'speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts.'" *Arbaugh,* 546 U. S., at 515 (quoting *Zipes*, 455 U. S., at 394). First, and most significantly, §411(a) expressly *allows* courts to adjudicate infringement claims involving unregistered works in three circumstances: where the work is not a U. S. work, where the infringement claim concerns rights of attribution and integrity under §106A, or where the holder attempted to register the work and registration was refused. Separately, §411(c) permits courts to adjudicate infringement actions over certain kinds of unregistered works where the author "declare[s] an intention to secure copyright in the work" and "makes registration for the work, if required by subsection (a), within three months after [the work's] first transmission." 17 U. S. C. §§411(c)(1)–(2). It would be at least unusual to ascribe jurisdictional significance to a condition subject to these sorts of exceptions.[5]

That the numerosity requirement in *Arbaugh* could be considered an element of a Title VII claim, rather than a prerequisite to initiating a lawsuit, does not change this conclusion, as our decision in *Zipes* demonstrates. *Zipes* (upon which *Arbaugh* relied) held that Title VII's requirement that sex-discrimination claimants timely file a discrimination charge with the EEOC before filing a civil action in federal court was nonjurisdictional. See 455 U. S., at 393; 42 U. S. C. §2000e–5(f)(1) (establishing

_____

[5] Cf. *Zipes*, 455 U. S., at 393–394, 397 (relying on the fact that Congress had "approved" at least some cases awarding Title VII relief to claimants who had not complied with the statute's Equal Employment Opportunity Commission (EEOC) filing requirement in holding that the filing requirement was not a jurisdictional prerequisite to suit); *United States* v. *Cotton*, 535 U. S. 625, 630 (2002) ("[J]urisdiction" properly refers to a court's power to hear a case, a matter that "can never be forfeited or waived").

specific time periods within which a discrimination claimant must file a lawsuit after filing a charge with the EEOC). A statutory condition that requires a party to take some action before filing a lawsuit is not automatically "a *jurisdictional* prerequisite to suit." *Zipes*, 455 U. S., at 393 (emphasis added). Rather, the jurisdictional analysis must focus on the "legal character" of the requirement, *id.*, at 395, which we discerned by looking to the condition's text, context, and relevant historical treatment, *id.*, at 393–395; see also *National Railroad Passenger Corporation* v. *Morgan*, 536 U. S. 101, 119–121 (2002). We similarly have treated as nonjurisdictional other types of threshold requirements that claimants must complete, or exhaust, before filing a lawsuit.[6]

The registration requirement in 17 U. S. C. A. §411(a) fits in this mold. Section 411(a) imposes a precondition to filing a claim that is not clearly labeled jurisdictional, is not located in a jurisdiction-granting provision, and admits of congressionally authorized exceptions. See §§411(a)–(c). Section 411(a) thus imposes a type of precondition to suit that supports nonjurisdictional treatment under our precedents.

## C

*Amicus* insists that our decision in *Bowles*, 551 U. S. 205, compels a conclusion contrary to the one we reach today. *Amicus* cites *Bowles* for the proposition that where Congress did not explicitly label a statutory condition as

---

[6] See *Jones* v. *Bock*, 549 U. S. 199, 211 (2007) (treating the administrative exhaustion requirement of the Prison Litigation Reform Act of 1995 (PLRA)—which states that "no action shall be brought with respect to prison conditions under §1983 of this title, or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted," 42 U. S. C. §1997e(a)—as an affirmative defense even though "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court"); *Woodford* v. *Ngo*, 548 U. S. 81, 93 (2006) (same).

jurisdictional, a court nevertheless should treat it as such if that is how the condition consistently has been interpreted and if Congress has not disturbed that interpretation. *Amicus* Brief 26. Specifically, *amicus* relies on a footnote in *Bowles* to argue that here, as in *Bowles*, it would be improper to characterize the statutory condition as nonjurisdictional because doing so would override "'a century's worth of precedent'" treating §411(a)'s registration requirement as jurisdictional. *Amicus* Brief 26 (quoting *Bowles*, *supra*, at 209, n. 2). This argument focuses on the result in *Bowles*, rather than on the analysis we employed.

*Bowles* did not hold that any statutory condition devoid of an express jurisdictional label should be treated as jurisdictional simply because courts have long treated it as such. Nor did it hold that all statutory conditions imposing a time limit should be considered jurisdictional.[7]

---

[7] *Bowles*, for example, distinguished *Scarborough* v. *Principi*, 541 U. S. 401 (2004), which characterized as nonjurisdictional an express statutory time limit for initiating postjudgment proceedings for attorney's fees under the Equal Access to Justice Act. See 551 U. S., at 211. As we explained, the time limit in *Scarborough* "concerned 'a *mode of relief* . . . ancillary to the judgment of a court' that already had plenary jurisdiction." 551 U. S., at 211 (quoting *Scarborough*, *supra*, at 413; (emphasis added)). *Bowles* also distinguished *Kontrick* v. *Ryan,* 540 U. S. 443 (2004), and *Eberhart* v. *United States*, 546 U. S. 12 (2005) *(per curiam)*, as cases in which the Court properly held that certain time limits were nonjurisdictional because they were imposed by rules that did not purport to have any jurisdictional significance. See 551 U. S., at 210–211. *Kontrick* involved "time constraints applicable to objections to discharge" in bankruptcy proceedings. 540 U. S., at 453. In that case, we first examined 28 U. S. C. §157(b)(2)(J), the statute "conferring jurisdiction over objections to discharge," and observed that it did not contain a timeliness requirement. *Kontrick*, 540 U. S., at 453. Rather, the "time constraints applicable to objections to discharge" were contained in the Bankruptcy Rules, which expressly state that they "'shall not be construed to extend or limit the jurisdiction of the courts.'" See *ibid.* (quoting Fed. Rule Bkrtcy. Proc. 9030). *Eberhart*, in turn, treated as nonjurisdictional certain rules that the Court held

Rather, *Bowles* stands for the proposition that context, including this Court's interpretation of similar provisions in many years past, is relevant to whether a statute ranks a requirement as jurisdictional.

In *Bowles*, we considered 28 U. S. C. §2107, which requires parties in a civil action to file a notice of appeal within 30 days of the judgment being appealed, and Rule 4 of the Federal Rules of Appellate Procedure, which "carries §2107 into practice." 551 U. S., at 208. After analyzing §2107's specific language and this Court's historical treatment of the type of limitation §2107 imposes (*i.e.*, statutory deadlines for filing appeals), we concluded that Congress had ranked the statutory condition as jurisdictional. Our focus in *Bowles* on the historical treatment of statutory conditions for taking an appeal is thus consistent with the *Arbaugh* framework. Indeed*, Bowles* emphasized that this Court had long treated such conditions as jurisdictional, including in statutes *other* than §2107, and specifically in statutes that predated the creation of the courts of appeals. See 551 U. S., at 209–210, and n. 2.

*Bowles* therefore demonstrates that the relevant question here is not (as *amicus* puts it) whether §411(a) itself has long been labeled jurisdictional, but whether the type of limitation that §411(a) imposes is one that is properly ranked as jurisdictional absent an express designation. The statutory limitation in *Bowles* was of a type that we had long held *did* "speak in jurisdictional terms" even absent a "jurisdictional" label, and nothing about §2107's text or context, or the historical treatment of that type of limitation, justified a departure from this view. That was not the case, however, for the types of conditions in *Zipes* and *Arbaugh*.

Here, that same analysis leads us to conclude that §411(a) does not implicate the subject-matter jurisdiction

––––––––––

"closely parallel[ed]" those in *Kontrick*. 546 U. S., at 15.

of federal courts. Although §411(a)'s historical treatment as "jurisdictional" is a factor in the analysis, it is not dispositive. The other factors discussed above demonstrate that §411(a)'s registration requirement is more analogous to the nonjurisdictional conditions we considered in *Zipes* and *Arbaugh* than to the statutory time limit at issue in *Bowles*.[8] We thus conclude that §411(a)'s registration requirement is nonjurisdictional, notwithstanding its prior jurisdictional treatment.[9]

### III

*Amicus* argues that even if §411(a) is nonjurisdictional, we should nonetheless affirm on estoppel grounds the Court of Appeals' judgment vacating the District Court's order approving the settlement and dismissing the case. According to *amicus*, petitioners asserted previously in these proceedings that copyright registration was jurisdictional, and this assertion should estop them from now asserting a right to waive objections to the authors' failure to register. *Amicus* urges us to prevent the parties "from 'playing fast and loose with the courts' by 'deliberately changing positions according to the exigencies of the mo-

––––––––

[8] This conclusion mirrors our holding in *Zipes* that Title VII's EEOC filing requirement was nonjurisdictional, even though some of our own decisions had characterized it as jurisdictional. See 455 U. S., at 395 (noting that "the legal character of the requirement was not at issue in those" earlier cases); see also *National Railroad Passenger Corporation* v. *Morgan*, 536 U. S. 101, 109, 121 (2002) (relying on the analysis in *Zipes*).

[9] *Amicus'* remaining jurisdictional argument—that the policy goals underlying copyright registration support construing §411(a)'s registration provisions as jurisdictional, see *Amicus* Brief 45—is similarly unavailing. We do not agree that a condition should be ranked as jurisdictional merely because it promotes important congressional objectives. See *Arbaugh* v. *Y & H Corp.*, 546 U. S. 500, 504, 515–516 (2006) (holding that Title VII's numerosity requirement is nonjurisdictional even though it serves the important policy goal of "spar[ing] very small businesses from Title VII liability").

ment.'"  *Amicus* Brief 58 (quoting *New Hampshire* v. *Maine*, 532 U. S. 742, 750 (2001)).

We agree that some statements in the parties' submissions to the District Court and the Court of Appeals are in tension with their arguments here.  But we decline to apply judicial estoppel.  As we explained in *New Hampshire*, that doctrine typically applies when, among other things, a "party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled."  *Id.*, at 750 (internal quotation marks omitted).

Such circumstances do not exist here for two reasons. First, the parties made their prior statements when negotiating or defending the settlement agreement.  We do not fault the parties' lawyers for invoking in the negotiations binding Circuit precedent that supported their clients' positions.  Perhaps more importantly, in approving the settlement, the District Court did not adopt petitioners' interpretation of §411(a) as jurisdictional.  Second, when the Court of Appeals asked petitioners to brief whether §411(a) restricted the District Court's subject-matter jurisdiction, they argued that it did not, and the Court of Appeals rejected their arguments.  See App. to Reply Brief for Petitioners 3a–5a, and n. 2.  Accepting petitioners' arguments here thus cannot create "inconsistent court determinations" in their favor.  *New Hampshire*, *supra*, at 751 (internal quotation marks omitted).  We therefore hold that the District Court had authority to adjudicate the parties' request to approve their settlement.

## IV

Our holding that §411(a) does not restrict a federal court's subject-matter jurisdiction precludes the need for us to address the parties' alternative arguments as to

whether the District Court had authority to approve the settlement even under the Court of Appeals' erroneous reading of §411. In concluding that the District Court had jurisdiction to approve the settlement, we express no opinion on the settlement's merits.

We also decline to address whether §411(a)'s registration requirement is a mandatory precondition to suit that—like the threshold conditions in *Arizona* v. *California*, 530 U. S. 392, 412–413 (2000) (res judicata defense); *Day* v. *McDonough*, 547 U. S. 198, 205–206 (2006) (habeas statute of limitations); and *Hallstrom* v. *Tillamook County*, 493 U. S. 20, 26, 31 (1989) (Resource Conservation and Recovery Act of 1976 notice provision)—district courts may or should enforce *sua sponte* by dismissing copyright infringement claims involving unregistered works.

\* \* \*

We reverse the judgment of the Court of Appeals for the Second Circuit and remand this case for proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE SOTOMAYOR took no part in the consideration or decision of this case.

# SUPREME COURT OF THE UNITED STATES

_____

No. 08–103

_____

REED ELSEVIER, INC., ET AL., PETITIONERS *v.* IRVIN MUCHNICK ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

[March 2, 2010]

JUSTICE GINSBURG, with whom JUSTICE STEVENS and JUSTICE BREYER join, concurring in part and concurring in the judgment.

I agree with the Court's characterization of 17 U. S. C. A. §411(a) (Supp. 2009). That provision, which instructs authors to register their copyrights before commencing suit for infringement, "is a precondition to filing a claim that does not restrict a federal court's subject-matter jurisdiction." *Ante*, at 1. I further agree that *Arbaugh* v. *Y & H Corp.*, 546 U. S. 500 (2006), is the controlling precedent, see *ante*, at 6, and that *Bowles* v. *Russell*, 551 U. S. 205 (2007), does not counsel otherwise. There is, however, undeniable tension between the two decisions. Aiming to stave off continuing controversy over what qualifies as "jurisdictional," and what does not, I set out my understanding of the Court's opinions in *Arbaugh* and *Bowles,* and the ground on which I would reconcile those rulings.

In *Arbaugh*, we held nonjurisdictional a prescription confining Title VII's coverage to employers with 15 or more employees, 42 U. S. C. §2000e–2(a)(1). After observing that "the 15-employee threshold . . . 'd[id] not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts,'" 546 U. S., at 515 (quoting *Zipes* v. *Trans World Airlines, Inc.*, 455 U. S. 385, 394 (1982)), the *Arbaugh* opinion announced and applied a "readily admin-

istrable bright line":

> "If the Legislature clearly states that a threshold limi-
> tation on a statute's scope shall count as jurisdic-
> tional, then courts and litigants will be duly in-
> structed and will not be left to wrestle with the issue.
> But when Congress does not rank a statutory limita-
> tion on coverage as jurisdictional, courts should treat
> the restriction as nonjurisdictional in character.  Ap-
> plying that readily administrable bright line to this
> case, we hold that the threshold number of employees
> for application of Title VII is an element of a plaintiff's
> claim for relief, not a jurisdictional issue."  546 U. S.,
> at 515–516 (citation and footnote omitted).

As the above-quoted passage indicates, the unanimous
*Arbaugh* Court anticipated that all federal courts would
thereafter adhere to the "bright line" held dispositive that
day.

*Bowles* moved in a different direction.  A sharply divided
Court there held "mandatory and jurisdictional" the time
limits for filing a notice of appeal stated in 28 U. S. C.
§2107(a), (c).  551 U. S., at 209 (internal quotation marks
omitted).  *Bowles* mentioned *Arbaugh* only to distinguish
it as involving a statute setting "an employee-numerosity
requirement, not a time limit."  551 U. S., at 211.  Section
2107's time limits were "jurisdictional," *Bowles* explained,
because they were contained in a statute, not merely a
rule, *id.*, at 210–213, and because "[t]his Court ha[d] long
held that the taking of an appeal within the prescribed
time is 'mandatory and jurisdictional,'" *id.*, at 209.  Fidel-
ity to *Arbaugh* and similarly reasoned decisions,* the
dissent in *Bowles* observed, would have yielded the conclu-
sion that statutory time limits "are only jurisdictional if

---

*\* E.g.*, *Eberhart* v. *United States*, 546 U. S. 12 (2005) *(per curiam)*;
*Scarborough* v. *Principi*, 541 U. S. 401 (2004); *Kontrick* v. *Ryan*, 540
U. S. 443 (2004).

Congress says so." 551 U. S., at 217 (opinion of Souter, J.).

*Bowles* and *Arbaugh* can be reconciled without distorting either decision, however, on the ground that *Bowles* "rel[ied] on a long line of this Court's decisions left undisturbed by Congress." *Union Pacific R. Co.* v. *Locomotive Engineers and Trainmen Gen. Comm. of Adjustment, Central Region*, 558 U. S. \_\_\_, \_\_\_ (2009) (slip op., at 13) (citing *Bowles*, 551 U. S., at 209–211). The same is true of our decision, subsequent to *Bowles*, in *John R. Sand & Gravel Co.* v. *United States*, 552 U. S. 130 (2008). There the Court concluded, largely on *stare decisis* grounds, that the Court of Federal Claims statute of limitations requires *sua sponte* consideration of a lawsuit's timeliness. *Id.*, at 136 ("[P]etitioner can succeed only by convincing us that this Court has overturned, or that it should now overturn, its earlier precedent.").

Plainly read, *Arbaugh* and *Bowles* both point to the conclusion that §411(a) is nonjurisdictional. Section 411(a) "does not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts." *Zipes*, 455 U. S., at 394. *Arbaugh*'s "readily administrable bright line" is therefore controlling. 546 U. S., at 516.

*Bowles* does not detract from that determination. *Amicus*, reading *Bowles* as I do, urges on its authority that we hold §411(a) jurisdictional lest we disregard "'a century's worth of precedent.'" Brief for Court-Appointed *Amicus Curiae* in Support of Judgment Below 26 (quoting *Bowles*, 551 U. S., at 209, n. 2); see *ante*, at 12. But in *Bowles* and *John R. Sand & Gravel Co.*, as just explained, we relied on longstanding decisions of *this Court* typing the relevant prescriptions "jurisdictional." *Bowles*, 551 U. S., at 209–210 (citing, *inter alia*, *Scarborough* v. *Pargoud*, 108 U. S. 567 (1883), and *United States* v. *Curry*, 6 How. 106 (1848)); *John R. Sand & Gravel Co.*, 552 U. S., at 136. *Amicus* cites well over 200 opinions that characterize §411(a) as jurisdictional, but not one is from this

Court, and most are "'drive-by jurisdictional rulings' that should be accorded 'no precedential effect,'" *Arbaugh*, 546 U. S., at 511 (quoting *Steel Co.* v. *Citizens for Better Environment*, 523 U. S. 83, 91 (1998)); see *Arbaugh*, 546 U. S., at 511–513; *ante*, at 5–6.

\*     \*     \*

For the reasons stated, I join the Court's judgment and concur in part in the Court's opinion.