# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

––––––

Filed: January 15, 2013

No. 10-1380

GROCERY MANUFACTURERS ASSOCIATION, ET AL.,
PETITIONERS

v.

ENVIRONMENTAL PROTECTION AGENCY,
RESPONDENT

GROWTH ENERGY,
INTERVENOR

––––––

Consolidated with 10-1414, 11-1002, 11-1046, 11-1072,
11-1086

––––––

On Petitions for Rehearing En Banc

––––––

Before: SENTELLE, *Chief Judge*; HENDERSON, ROGERS,
TATEL, GARLAND*, BROWN, GRIFFITH, and
KAVANAUGH**, *Circuit Judges*

## O R D E R

The petition of the American Petroleum Institute and the
Food Petitioners for rehearing en banc; the petition of the
Engine Products Group for rehearing en banc; and the petition

of American Fuel & Petrochemical Manufacturers and International Liquid Terminals Association for rehearing en banc, and the responses to the petitions were circulated to the full court, and a vote was requested. Thereafter, a majority of the judges eligible to participate did not vote in favor of the petitions. Upon consideration of the foregoing, it is

**ORDERED** that the petitions be denied.

**FOR THE COURT:**
Mark J. Langer, Clerk

BY: /s/
Jennifer M. Clark
Deputy Clerk

\* Circuit Judge Garland did not participate in this matter.

\*\* Circuit Judge Kavanaugh would grant the petitions.

\*\* A statement by Circuit Judge Kavanaugh dissenting from the denial of the petition for rehearing en banc is attached.

KAVANAUGH, *Circuit Judge*, dissenting from the denial of rehearing en banc:

This case concerns a challenge to EPA's E15 waiver decision. The E15 waiver, in conjunction with the statutory renewable fuel mandate, will require petroleum producers to refine and sell E15, a blend of gasoline that contains 15 percent ethanol. The E15 waiver also will increase the demand for corn and thus increase corn prices for food producers. Two industry groups separately challenged the E15 waivers – the food producers who will pay higher prices for corn and the petroleum producers who will be forced to refine and sell E15. They contended that the E15 waiver will palpably and negatively affect the American food and petroleum industries, with corresponding impacts on American consumers. And they argued that the E15 waiver is unlawful because it exceeds EPA's statutory authority.

Even though EPA did not raise a challenge to the standing of the food producers or the petroleum producers, the panel dismissed the case on standing grounds. The panel determined that the *food producers* have Article III standing but lack prudential standing because, according to the panel, the food producers are not within the zone of interests under the relevant ethanol-related statute. The panel separately held that the *petroleum producers* lack Article III standing. We must reach the merits if *either* the food producers or the petroleum producers have standing. In my view, both groups plainly have standing.

I

To begin with, the panel ruled that the *food producers* lack prudential standing. That holding is incorrect for either of two alternative reasons.

*First*, the Administrative Procedure Act's prudential standing "zone of interests" requirement is not jurisdictional, and the issue was not raised in this case by respondent EPA. Therefore, the issue is forfeited. Based on older circuit precedent, however, the panel held that the zone of interests requirement is jurisdictional and that the court therefore had to consider it on its own motion. The circuits are split on whether the zone of interests requirement is jurisdictional; some other circuits disagree with the conclusion of the panel here. Applying recent Supreme Court precedents, I would conclude that the zone of interests requirement is not jurisdictional. The recent Supreme Court decisions have repeatedly emphasized more careful attention to the jurisdiction label. Those cases have stressed that a rule is not jurisdictional unless it is labeled by Congress as such or unless it speaks to the power of the courts to hear the case. *See, e.g.*, *Henderson ex rel. Henderson v. Shinseki*, 131 S. Ct. 1197, 1202-03 (2011); *Reed Elsevier, Inc. v. Muchnick*, 130 S. Ct. 1237, 1243-44 (2010).

Here, the APA gives a cause of action to "aggrieved" parties; the zone of interests requirement is simply a way to help determine whether a particular party is "aggrieved." The zone of interests requirement does not pertain to the power of the court to hear a case. Under the Supreme Court's recent decisions, therefore, the zone of interests requirement is not jurisdictional – a reading of the recent Supreme Court precedents with which Judge Tatel appears to agree, as he indicated in his panel concurrence. As a result, because EPA chose not to challenge the food producers' prudential standing – in other words, because EPA accepted that the food producers were within the zone of interests and therefore an aggrieved party – that issue has been forfeited and is no longer part of the case.

*Second*, even if the prudential standing zone of interests issue were properly presented in this case, the food producers easily meet the requirements set forth in the Supreme Court's important recent decision in *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*. 132 S. Ct. 2199 (2012). Justice Kagan's opinion for the Supreme Court in *Match-E* – the Supreme Court's first comprehensive analysis of the prudential standing zone of interests requirement in 25 years – made clear that the zone of interests test poses a very low additional bar to an otherwise permissible APA suit by a party with Article III standing.

The Supreme Court's *Match-E* decision was issued after oral argument in our case, and the panel majority opinion appeared to treat it as a bit of an afterthought, devoting a scant two sentences to it. Under *Match-E*, as I read it, the food producers are well within the zone of interests of Section 7545, which sets forth the ethanol mandate. *See* 42 U.S.C. § 7545. The food producers' case for being within the zone of interests is especially strong here because Congress *expressly* took account of the interests of food producers, among others, in this ethanol-related statute. Moreover, the food producers' economic interests are directly affected by the increased demand for corn caused by EPA's E15 waiver. The prudential standing zone of interests issue is thus not a close call here, in my view, even assuming that it is properly part of the case.

With the panel majority opinion left intact, this Court's prudential standing law will unfortunately linger in a state of uncertainty and error. I hope that it can be clarified at some point in a manner that comports with the Supreme Court's recent decisions on jurisdiction and prudential standing.

II

Of course, even if the food producers could not bring suit, the *petroleum producers* have separately challenged the E15 waiver. The panel ruled that the petroleum producers lack Article III standing to challenge the E15 waiver. But the petroleum producers are directly regulated parties; and as the Supreme Court has said, when a party "is himself an object of the action" at issue, "there is ordinarily little question that the action" has "caused him injury, and that a judgment preventing" the action "will redress it." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561-62 (1992). Indeed, EPA did not even challenge the petroleum producers' Article III standing, recognizing at oral argument that the petroleum producers' standing was "self-evident." Tr. of Oral Arg. at 30.

Although we of course still have to consider Article III standing because Article III standing is jurisdictional, EPA's view on this point is quite telling. EPA did not raise Article III standing no doubt because it fully understands how this program actually works, and EPA appreciates that the combination of the statutory renewable fuel mandate and EPA's E15 waiver will obviously force petroleum producers to refine and sell E15. The panel majority opinion speculated, however, that the petroleum producers can meet the renewable fuel mandate without refining and selling E15, and that EPA's E15 waiver therefore would not cause the injury to the petroleum producers. The evidence overwhelmingly indicates the contrary – namely, that petroleum producers will have to use E15 to meet the renewable fuel mandate. In fact, the ethanol producers who sought the E15 waiver specifically argued to EPA that the E15 waiver was "necessary" for petroleum producers to meet the renewable fuel mandate. What better evidence do we need? The petroleum producers have shown, at a minimum, the requisite "substantial

probability" that the E15 waiver will require them to refine and sell E15.  The petroleum producers thus have Article III standing to challenge the E15 waiver.

* * *

The panel's decision to throw out the suit on standing grounds is mistaken in multiple independent ways, in my respectful view.  And the panel's standing holding is problematic not only because of the erroneous standing law that it creates, but also because it is outcome-determinative in a case with significant economic ramifications for the American food and petroleum industries, as well as for American consumers who will ultimately bear some of the costs.[1]  The panel's standing holding is outcome-determinative because EPA will lose if we reach the merits.  The E15 waiver plainly violates the statutory text.  The statute does not allow a waiver for a new fuel if the waiver would cause failure of emissions standards in cars manufactured after 1974.  The evidence is undisputed that this E15 waiver would cause failure of emissions standards in cars manufactured through 2000.  Yet EPA still granted the waiver.  EPA's action simply cannot be squared with the statutory text.

I respectfully dissent from the denial of rehearing en banc.

---

[1] Although not my focus here, I also note that the E15 waiver apparently will harm some cars' engines, a point made by a third set of petitioners in this case (the engine manufacturers).  Indeed, just a few weeks ago, the American Automobile Association warned of the damage E15 will cause to car engines and took the extraordinary step of publicly asking EPA to block the sale of E15. *See* Gary Strauss, *AAA Warns E15 Gasoline Could Cause Car Damage*, USA TODAY, November 30, 2012.