**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,**
Plaintiff,

v.

**BLINDED VETERANS ASSOCIATION,**
Defendant.

**Civil Action No. 14–2102 (RDM)**

United States District Court,
District of Columbia.

Signed July 7, 2015

Philip Matthew Kovnat, U.S. Equal Employment Opportunity Commission, Philadelphia, PA, for Plaintiff

Tina M. Maiolo, Carr Maloney PC, Washington, DC, for Defendant

### MEMORANDUM OPINION AND ORDER

RANDOLPH D. MOSS, United States District Judge

In December 2014, Plaintiff Equal Employment Opportunity Commission ("the EEOC") filed this suit against Defendant Blinded Veterans Association ("BVA"), alleging violations of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.* ("ADEA"). The EEOC alleges that BVA discriminated against two long-time employees, Suzanne Matthews and Lazaro Martinez, on the basis of age. *See* Dkt. 1 at 1. Pending before the Court is BVA's motion to dismiss for lack of jurisdiction pursuant to Rule 12(b)(1). *See* Dkt. 3. BVA argues that the EEOC did not "(1) make a good faith attempt to conciliate, [or] (2) make an independent investigation of the charges of discrimination at issue—both of which are prerequisites to filing suit." *See* Dkt. 3 at 3.

After the parties completed their briefing on BVA's motion, the Supreme Court issued its decision in *Mach Mining, LLC, v. EEOC,* — U.S. ——, 135 S.Ct. 1645, 191 L.Ed.2d 607 (2015), holding that "a court may review whether the EEOC satisfied its statutory obligation to attempt conciliation before filing suit" under Title VII, 135 S.Ct. at 1649. The Supreme Court concluded, however, "that the scope of that review is narrow, [and] thus recogniz[ed] the EEOC's extensive discretion to determine the kind and amount of communication with an employer appropriate in any given case." *Id.* The parties have now filed supplemental briefs addressing *Mach Mining* and its application to this ADEA case. *See* Dkts. 10, 11. For the reasons set forth below, the Court **DENIES** BVA's motion.

### I. BACKGROUND

In 2013, Suzanne Matthews, Lazaro Martinez, and Earl Ivie ("the charging parties"), who are all former employees of BVA, filed charges of age discrimination with the EEOC. The EEOC notified BVA of the charges, asked for a statement of BVA's position, and asked BVA to submit additional information relating to the charges. *See* Dkt. 3 at 3; Dkt. 5 at 3. In May 2014, the EEOC consolidated the charges into a single investigation. *See* Dkt. 5, Ex. B.

The EEOC determined that there was reasonable cause to believe that BVA discriminated against each of the charging parties and invited BVA to conciliate. *See* Dkt. 3, Exs. A, B, C. The EEOC proposed three conciliation agreements, each of which included non-monetary injunctive relief and a monetary award for the charging party. *See* Dkt. 3, Exs. D, E, F. Through counsel, BVA agreed to the proposed non-monetary remedies, but counter-offered with respect to the monetary relief. *See* Dkt. 3, Exs. G, H, I. The EEOC acknowledged the parties' "agreement on the Non–Monetary Relief set forth in the proposed Conciliation Agreements" and also counter-offered on the monetary relief. *See* Dkt. 3, Ex. J. BVA then proposed to increase the monetary awards, *see* Dkt. 3, Ex. K, but also added "another condition" relating to Mr. Ivie:

> Ivie: We will increase our offer from $25,000 to $32,000 total (inclusive of all damages including without being limited to back pay, liquidated damages and attorneys fees and costs)—PLEASE NOTE THAT ANOTHER CONDITION IS THAT MR. IVIE VOLUNTARILY DISMISS WITH PREJUDICE THE LAWSUIT HE FILED IN CALIFORNIA BASED UPON THE SAME ALLEGATIONS IN THIS MATTER AND IN WHICH HE MISSTATED TO THE COURT THAT HE HAD APPROPRIATELY EXHAUSTED ADMINISTRATIVE REMEDIES.

Dkt. 3, Ex. K (capitalization in original). Counsel for the EEOC responded:

> Unfortunately, your client's condition that Mr. Ivie withdraw his California lawsuit is untenable for the Commission. The EEOC cannot settle claims as part of its informal endeavors of conciliation on which it did not find probable cause of a violation and on which it has no authority to litigate. . . .

> If your client is amenable to dropping this condition to your September 22 offer of relief, the commission may be able to reach an acceptable agreement with your client through further conciliation discussions.

Dkt. 3, Ex. L. On October 9, 2014, BVA's counsel responded, "I have spoken to my clients. They are not willing to discuss monetary settlement with any of the charging parties without a global settlement of all claims." Dkt. 5, Ex. G, at 1.

Six days later, the EEOC formally notified BVA that the conciliation efforts had been unsuccessful, no further conciliation efforts would be made, and the cases would be considered "for possible litigation." *See* Dkt. 3, Ex. M. The EEOC then filed this suit, seeking monetary relief on behalf of Ms. Matthews and Mr. Martinez and injunctive and declaratory relief. *See* Dkt. 1 at 1, 8–9. The EEOC does not seek relief on behalf of Mr. Ivie. *Id.* BVA has moved to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure. *See* Dkt. 3 at 1, 5.

## II. DISCUSSION

BVA argues that the EEOC failed to satisfy two preconditions to suit under the ADEA: "(1) [to] make a good faith attempt to conciliate, and (2) [to] make an independent investigation of the charges of discrimination at issue." *See* Dkt. 3 at 3. According to BVA, the EEOC's failure to comply with these prerequisites deprives the Court of subject matter jurisdiction. *See id.* In response, the EEOC argues that these statutory requirements are not jurisdictional, *see* Dkt. 5 at 5–6, and that the Court should treat BVA's motion as a motion for summary judgment, *see id.* at 6–7. The EEOC further argues that the ADEA requires only conciliation, not investigation, and that in any event, it has

satisfied both requirements. *See id.* at 13–18, 23–24. The Court will first address whether the ADEA's pre-suit requirements are jurisdictional in nature.

## A. Whether the ADEA's Pre–Suit Requirements Are Jurisdictional

Prior to filing an ADEA enforcement action, the EEOC must satisfy certain statutory requirements. Section 7(b) of the ADEA requires that "[b]efore instituting any action under this section, the [EEOC] shall attempt to eliminate the discriminatory practice or practices alleged, and to effect voluntary compliance with the requirements of [the ADEA] through informal methods of conciliation, conference, and persuasion." *See* 29 U.S.C. § 626(b). The premise of BVA's motion to dismiss is that completion of the conciliation requirement is a prerequisite to the exercise of the court's subject matter jurisdiction.[1] The EEOC, citing the Supreme Court's decision in *Arbaugh v. Y & H Corp.,* 546 U.S. 500, 515–16, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006), argues that this requirement is non-jurisdictional. Although a plaintiff's failure to satisfy a non-jurisdictional requirement may also justify dismissal, the distinction between jurisdictional and non-jurisdictional prerequisites to suit is important because it affects the legal standard applicable to a threshold motion and whether disposition of such a motion constitutes "a ruling on the merits with *res judicata* effect." *Haase v. Sessions,* 835 F.2d 902, 906 (D.C.Cir.1987).

▆▆▆ "[J]urisdictional statutes speak to the power of the court rather than to the rights or obligations of the parties." *Landgraf v. USI Film Prods.,* 511 U.S.

244, 274, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994) (quotation marks omitted). When "determining whether to classify a statutory limitation as jurisdictional," a court must "inquire whether Congress has 'clearly state[d]' that the rule is jurisdictional," and "absent such a clear statement, ... 'courts should treat the restriction as nonjurisdictional in character.'" *Sebelius v. Auburn Reg'l Med. Ctr.,* —— U.S. ——, 133 S.Ct. 817, 824, 184 L.Ed.2d 627 (2013) (quoting *Arbaugh,* 546 U.S. at 515–16, 126 S.Ct. 1235). The Supreme Court has repeatedly cautioned against reading jurisdictional requirements into statutory provisions absent a clear directive from Congress. *See, e.g., id.* at 826 (holding that a time limit governing certain administrative appeals under the Medicare Act was not jurisdictional); *Arbaugh,* 546 U.S. at 516, 126 S.Ct. 1235 (holding that "the threshold number of employees for application of Title VII is an element of a plaintiff's claim for relief, not a jurisdictional issue"); *Zipes v. TWA,* 455 U.S. 385, 398, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982) (holding that compliance with an administrative filing period is "not a jurisdictional prerequisite to filing a Title VII suit, but a requirement subject to waiver as well as tolling when equity so requires"); *Reed Elsevier, Inc. v. Muchnick,* 559 U.S. 154, 169, 130 S.Ct. 1237, 176 L.Ed.2d 18 (2010) (holding that a registration requirement in the Copyright Act "is nonjurisdictional, notwithstanding its prior jurisdictional treatment").

▆▆▆ "The jurisdictional inquiry requires an 'examination of the condition's text, context, and relevant historical treatment.'" *Oakey v. U.S. Airways Pilots*

---

1. Section 7(b) does not mention an investigation requirement. BVA argues, however, that an investigation requirement is implicit. *See* Dkt. 6 at 18–19 (citing *Shikles v. Sprint/United Management Co.,* 426 F.3d 1304, 1311 (10th Cir.2005)). BVA does not offer any independent reason why an implied investigation requirement would be jurisdictional, if the conciliation requirement is non-jurisdictional.

*Disability Income Plan,* 723 F.3d 227, 236 (D.C.Cir.2013) (quoting *Chevron. Mining, Inc. v. NLRB,* 684 F.3d 1318, 1328 (D.C.Cir.2012)). The text of the ADEA does not contain a "clear statement," *see Auburn Reg'l Med. Ctr.,* 133 S.Ct. at 824, that section 7(b)'s conciliation requirement is jurisdictional. The applicable jurisdictional grant is found in two provisions of the Fair Labor Standards Act, 29 U.S.C. §§ 216, 217, which are incorporated into section 7(b) by reference. They provide that the government may bring an enforcement action "in any court of competent jurisdiction," 29 U.S.C. § 216(c); *see also id.* § 217 (providing that "[t]he district courts ... shall have jurisdiction" to grant injunctive relief). Section 7(b) of the ADEA does not expressly limit that jurisdictional grant. To be sure, section 7(b) requires that the EEOC take certain actions "[b]efore instituting any action under this section," 29 U.S.C. § 626(b), but it does not indicate, much less "clearly state," that the failure to comply deprives a court of jurisdiction. BVA is correct that conciliation is mandatory and serves important statutory purposes, *see* Dkt. 3 at 8–9, but those considerations are not sufficient to make a statutory requirement jurisdictional, *see Gonzalez v. Thaler,* ––– U.S. –––, 132 S.Ct. 641, 651, 181 L.Ed.2d 619 (2012) ("[T]he Court has long rejected the notion that all mandatory prescriptions, however emphatic, are ... properly typed jurisdictional." (internal quotation marks omitted)); *see also Reed Elsevier, Inc.,* 559 U.S. at 169 n. 9, 130 S.Ct. 1237 ("We do not agree that a condition should be ranked as jurisdictional merely because it promotes important congressional objectives.").

The legislative history of the 1978 amendments to the ADEA confirms that "conciliation is not a jurisdictional prerequisite to maintaining a cause of action under the act." *See Joint Explanatory Statement of the Committee of Conference,* H.R. Conf. Rep. No. 95–950, 95th Cong., 2d Sess. 12 (1978), at 13, *reprinted at* 1978 U.S.C.C.A.N. 534. Among other things, Congress amended section 7 to provide "for the tolling of the statute of limitations," beginning when the Department of Labor (later the EEOC) notifies an employer "that it is prepared to commence conciliation pursuant to 7(b)." *Id.* at 13; *see* P.L. 95–256, § 4(c)(1), 92 Stat. 189, 191 (amending section 7(e) of the ADEA). In discussing this tolling provision, the Conference Report states:

> The conferees wish to make clear that conciliation is not a jurisdictional prerequisite to maintaining a cause of action under the act. In *Brennan v. Ace Hardware Corp.,* 495 F.2d 368 (8th Cir. 1974), the court reflected a proper understanding of the conciliation requirement in rejecting the employer's argument that the statutory directive is a "condition precedent to the court entertaining jurisdiction of the legal action". In that case the court correctly noted that Section 7(b) grants to the district courts the equitable discretion to stay lawsuits pending before them in order to permit conciliation to be completed before the lawsuit continues.

H.R. Conf. Rep. No. 95–950 at 13 (emphasis added); *see also Brennan v. Ace Hardware Corp.,* 495 F.2d at 376.

"Although subsequent legislative history is not dispositive," *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 394, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982), the Supreme Court relied on other portions of this same post-enactment legislative history to interpret Title VII of the Civil Rights Act of 1964, which served as the model for the ADEA, *see id.* at 395, 102 S.Ct. 1127 n. 11. In *Zipes,* the Court considered whether the time limit for filing charges with the EEOC under Title VII is a jurisdictional

precondition to suit. In concluding that the requirement is not jurisdictional, the Court looked to the 1978 legislative history to the ADEA amendments, and, in particular, to the same Conference Report quoted above, which stated that " 'the "charge" requirement is not a jurisdictional prerequisite to maintaining an action under the ADEA.' " *Id.* (quoting H.R. Conf. Rep. No. 95–950 at 12). The Supreme Court thus found support for the conclusion that the Title VII requirement to bring a timely charge is not jurisdictional in the fact that Title VII served as the model for the ADEA and the 1978 Congress expressed the view that the timely-charge requirement in the ADEA is non-jurisdictional. *See Zipes,* 455 U.S. at 395 n. 11, 102 S.Ct. 1127.

Here, the case for reliance on the 1978 legislative history is, if anything, stronger than the case for the Supreme Court's reliance on that legislative history in *Zipes.* The 1978 amendments were directed at the ADEA, not Title VII. It appears, moreover, that the observation contained in the 1978 Conference Report was directly relevant to the amendments enacted in 1978. At that time, the statute of limitations for bringing an ADEA claim was two years from the date the cause of action accrued. *See* 29 U.S.C. § 626(e) (1976) (providing that 29 U.S.C. § 255 "shall apply to actions under this chapter"); 29 U.S.C. § 255 (1976) (providing that with respect to causes of action accruing after May 1947, an action "may be commenced within two years after the cause of action accrued"). The 1978 amendments, in relevant part, were adopted to toll the statute of limitations while the conciliation process took place. *See* H.R. Conf. Rep. No. 95–

950 at 13. The Senate had proposed that this tolling be limited to two years, while the House bill included no similar tolling agreement. *Id.* As a compromise, Congress agreed to toll the statute of limitations during conciliation, but only for up to one year. *Id.*; *see* P.L. 95–256, § 4(c)(1), 92 Stat. 189, 191 (amending section 7(e) of the ADEA to provide that during conciliation, "the statute of limitations as provided in [29 U.S.C. § 255] shall be tolled, but in no event for a period in excess of one year"). It was in explaining this compromise that the Conference Report observed that "conciliation is not a jurisdictional prerequisite to maintaining a cause of action under the act," and that, as a result, a district court would have "discretion to stay lawsuits pending before them in order to permit conciliation to be completed before the lawsuit continues," H.R. Conf. Rep. No. 95–950 at 13.[2] Although the Conference Report does not offer further detail, it appears that the conferees were willing to limit the tolling period to one year on the understanding that a charging party could, if necessary, file suit before conciliation was completed in order to comply with the statute of limitations. The district court could then stay the action pending completion of the conciliation process.

As the Court of Appeals has observed, "the view of a subsequent Congress is not controlling evidence of the intent of an earlier Congress," but "such evidence can legitimately be used for its persuasive value," particularly where the evidence "is consistent with evidence of the intent of the enacting Congress." *Rettig v. Pension Benefit Guaranty Corp.,* 744 F.2d 133, 149

---

**2.** In 1991, Congress amended section 7(e) again, replacing the cross-reference to the limitations period in 29 U.S.C. § 255 and the one-year tolling provision with language providing that "[a] civil action may be brought under this section" by an aggrieved individual "within 90 days after" receiving notification from the EEOC that the charge was dismissed or the proceedings otherwise terminated. *See* P.L. 102–166, tit. I, § 115, 105 Stat. 1079.

n. 43 (D.C.Cir.1984). Here, even without the subsequent legislative history, the Court would conclude that the conciliation requirement is a non-jurisdictional prerequisite to suit. The 1978 Conference Report, however, confirms that conclusion and does so in a context in which Congress did not merely opine on the actions of prior Congresses, but amended the law in relevant respects. *Cf. Nat'l R.R. Passenger Corp. v. Boston & Maine Corp.*, 503 U.S. 407, 419, 112 S.Ct. 1394, 118 L.Ed.2d 52 (1992) (subsequent amendments "confirm[ed]" the statute's meaning, even where they did "not modify the specific language at issue").

■ BVA argues that other courts have treated the ADEA's pre-filing requirements as "jurisdictional." At least some of the decisions BVA cites appear to be the type of "drive-by jurisdictional rulings that" the Supreme Court has held "should be accorded no precedential effect on the question whether the federal court had authority to adjudicate the claim in suit," *see Arbaugh*, 546 U.S. at 511, 126 S.Ct. 1235 (quotation marks omitted), because they fail to specify whether a dismissal is for lack of subject matter jurisdiction or other reasons or assume, without analysis, that dismissal for lack of subject matter jurisdiction is appropriate. In any event, BVA cites no controlling authority holding that conciliation is a jurisdictional prerequisite to suit. The Court of Appeals has not addressed that question, but has held that "the [ADEA's] timeliness and exhaustion requirements are *not* jurisdictional in nature but rather are statutory conditions precedent to the instigation of litigation." *Kennedy v. Whitehurst*, 690 F.2d 951, 961 (D.C.Cir.1982) (emphasis in original). As the Supreme Court has noted, moreover, a district court may stay a private ADEA action "to allow an opportunity for conciliation and settlement," even where the

EEOC has not begun conciliation efforts, *see Federal Express Corp. v. Holowecki*, 552 U.S. 389, 407, 128 S.Ct. 1147, 170 L.Ed.2d 10 (2008), and BVA acknowledges that courts "have stayed proceedings pending further conciliation," *see* Dkt. 3 at 10. If BVA were correct that the EEOC's failure to engage in conciliation deprived the court of subject matter jurisdiction, courts would lack the power to maintain jurisdiction over a matter while the parties engage in conciliation efforts.

The Court, accordingly, concludes that the conciliation requirement is a non-jurisdictional prerequisite to suit. At one level, that determination resolves the pending motion. BVA has moved to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). Because the argument BVA raises does not go to the Court's jurisdiction, that motion fails on its own terms.

Neither party, however, has argued that a conclusion that the conciliation requirement is not jurisdictional should end the matter. Most notably, although the EEOC agrees with the Court's conclusion that BVA's motion is not properly brought under Federal Rule of Civil Procedure 12(b)(1), it contends that the Court may convert the motion to dismiss for lack of jurisdiction into a motion for summary judgment pursuant to Federal Rule of Civil Procedure 12(d). Dkt. 5 at 7. That suggestion requires that the Court consider whether it has the authority to convert the pending motion into a motion for summary judgment.

At first glance, the Court of Appeals' decision in *Haase v. Sessions*, 835 F.2d 902, 906 (D.C.Cir.1987), may seem to preclude this course of action, but upon closer review, the Court concludes that the concerns raised in that decision are inapplicable here. In *Haase*, the Court of Appeals considered whether a motion that was

brought generically under Rule 12(b), without specifying the relevant subdivision, was properly considered a Rule 12(b)(1) or 12(b)(6) motion. 835 F.2d at 905–06. After concluding that the motion raised a jurisdictional defense, the Court of Appeals went on to hold that the motion could not be converted from what should have been a Rule 12(b)(1) motion into a motion for summary judgment under Rule 56. *Id.* As the Court of Appeals explained:

> It seems clear ... that the plain language of Rule 12(b) permits *only* a 12(b)(6) motion to be converted into a motion for summary judgment. The last sentence of Rule 12(b), by requiring "a motion asserting the defense number (6)" to be treated as one for summary judgment if extra-pleading material is introduced, precludes by negative implication the possibility that motions filed under 12(b)(1)-(5) or (7) may be so treated.

*Id.*[3] Based on this language and the distinct purposes and operations of Rules 12(b)(1) and 12(b)(6), the Court of Appeals embraced the conclusion that " 'the impropriety of transforming Rule 12(b)(1) motions into summary-judgment motions is well-settled.' " *Id.* at 906 (quoting *Gordon v. Nat'l Youth Work Alliance,* 675 F.2d 356, 363 n. 18 (D.C.Cir.1982) (Robinson, C.J., concurring)).

▇ The issues presented in *Haase* and this case, however, are different in one important respect. In *Haase,* the Court of Appeals concluded that the motion—although not denominated as such—was properly construed as a Rule 12(b)(1) motion. BVA's motion, in contrast, is styled as arising under Rule 12(b)(1), but raises a non-jurisdictional issue and thus should have been brought under Rule 12(b)(6).

As a result, conversion of BVA's motion does not raise either of the principal concerns addressed in *Haase.* First, the *Haase* decision focused on the language of what is now Rule 12(d) and stressed that it only expressly authorizes the conversion of a Rule 12(b)(6)—and now a Rule 12(c)—motion into a motion for summary judgment. But, here, unlike in *Haase,* the pending motion is best construed as a Rule 12(b)(6) motion that was incorrectly denominated a Rule 12(b)(1) motion. So construed, the language of Rule 12(d) poses no obstacle to conversion.

Second, the *Haase* decision focused on the different purposes and operation of Rules 12(b)(1) and 12(b)(6). *See* 835 F.2d at 905–06. As the Court of Appeals observed in *Haase,* "Rule 12(b)(1) presents a threshold challenge to a court's jurisdiction, whereas 12(b)(6) presents a ruling on the merits with *res judicata* effect." 835 F.2d àt 905. That is, while a dismissal under Rule 12(b)(1) generally has *res judicata* effect with respect to the jurisdictional determination alone, *see Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 702 n. 9, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982), a dismissal under Rule 12(b)(6) or Rule 56 generally constitutes a final disposition of the merits and thus "precludes a party from relitigating claims that were or could have been raised in the initial action," *Meng v. Schwartz,* 305 F.Supp.2d 49, 61 (D.D.C. 2004). That concern, however, is absent here, as the Court has already concluded that BVA's motion does not raise a jurisdictional issue. However BVA's motion is styled, a decision on the motion will have the same collateral consequences as a motion that was brought in the first instance under Rule 12(b)(6). Moreover, should the

---

**3.** The language quoted in *Haase* has subsequently been revised and moved from Rule 12(b) to Rule 12(d).

Court find that the EEOC has failed to satisfy the conciliation requirement, the appropriate course of action would likely be a stay, not a dismissal: "courts that hear[ ] the merits" of ADEA claims may simply stay "the proceedings to allow an opportunity for conciliation and settlement." *Holowecki,* 552 U.S. at 407, 128 S.Ct. 1147. As the Supreme Court has recognized in the analogous context of a suit to enforce Title VII, "[s]hould the court find in favor of the employer" that the EEOC has not engaged in conciliation efforts, "the appropriate remedy is to order the EEOC to undertake the mandated efforts to obtain voluntary compliance." *Mach Mining,* 135 S.Ct. at 1656.

Before deciding to treat the present motion as a motion for summary judgment, the Court must consider one final issue that is not discussed in *Haase.* Federal Rule of Civil Procedure 12(d) requires that "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion" before a Rule 12(b)(6) motion is converted to a motion for summary judgment. That safeguard presents no obstacle here, however, because both sides have had a reasonable opportunity to present such material: BVA not only received clear notice that the EEOC sought to convert the motion, it had already treated that motion as evidentiary and had put before the Court the materials it deemed relevant to disposition of the motion. *Cf. Gordon,* 675 F.2d at 361 (plaintiff was not provided "reasonable opportunity to present relevant material" (quotation marks omitted)). In addition, BVA had ample opportunity to raise any objections to the conversion of its motion in its reply brief, but declined to do so. See Dkt. 6. It also had the opportunity to submit any additional relevant evidence with its reply, but declined to do that as well. *Id.* Thus, the Court concludes that neither party would be prejudiced by the

consideration of BVA's motion and the parties'· evidence under the Rule 56 standard. Given that the alternative would be to deny BVA's motion as improperly brought under Rule 12(b)(1), the Court concludes that it is both fair and appropriate to give BVA the benefit of the doubt and to consider whether it would be entitled to relief if its motion were instead treated as arising under Rules 12(b)(6) and 56.

## B. Pre–Suit Conciliation and Investigation

### 1. *Conciliation*

As discussed above, the ADEA requires the EEOC "to attempt to eliminate the discriminatory practice or practices alleged, and to effect voluntary compliance with the requirements of [the ADEA] through informal methods of conciliation, conference, and persuasion," 29 U.S.C. § 626(b). Title VII contains a similar conciliation requirement. *See* 42 U.S.C. § 2000e–5 (requiring the EEOC to "endeavor to eliminate [the] alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion."). The parties agree that in light of the similar language and the strong parallels between the two statutes, the standard of review used in Title VII cases applies as well to the ADEA's conciliation requirements. *See* Dkt. 10 at 1 n.1; Dkt. 11 at 1 n.1. The Court need not decide whether the two standards are identical in all respects, but will treat the parties' agreement as controlling for purposes of this motion.

The Supreme Court recently confirmed that the EEOC's satisfaction of Title VII's conciliation requirement is subject to judicial review. *See Mach Mining,* 135 S.Ct. at 1652. "The EEOC, to meet the statutory condition, must tell the employer about

the claim—essentially, what practice has harmed which person or class—and must provide the employer with an opportunity to discuss the matter in an effort to achieve voluntary compliance. If the [EEOC] does not take those specified actions, it has not satisfied Title VII's requirement to attempt conciliation." *Id.* (citation omitted).

Under *Mach Mining*, there is no doubt that the Court "may review whether the EEOC satisfied its statutory obligation to attempt conciliation prior to filing suit." *See* 135 S.Ct. at 1649. "[T]he scope of that review," however, "is narrow." *Id.* The EEOC has "extensive discretion to determine the kind and amount of communication with an employer appropriate in any given case," *id.* and its conciliation efforts are subject only to "relatively barebones review" by courts, *id.* at 1652. Here, the EEOC has done more than enough to survive "relatively barebones review." It communicated the claims to BVA, allowed BVA to respond, engaged in discussions, and decreased its requests for monetary relief in response to BVA's counter-offer, *see* Declaration of Mindy E. Weinstein, Dkt. 10, Ex. A, at 1–3; *see also* Dkt. 3, Exs. A–L.

BVA does not dispute any of these facts, but argues that the EEOC "failed to fulfill its statutory duties," Dkt. 3 at 3, because it did not "adhere to the *intent* of the conciliation requirement," *see* Dkt. 11 at 2 (emphasis added). BVA maintains that when the parties reached an impasse with respect to the Ivie claims, the EEOC should have engaged in "separate" conciliations of the Matthews and Martinez claims, *see* Dkt. 11 at 2, but instead "prematurely halted" the conciliation discussions, *see* Dkt. 3 at 11.

This argument cannot be reconciled with the "narrow" review of the conciliation process recognized in *Mach Mining. See*

135 S.Ct. at 1649. There is no dispute that the EEOC did, in fact, engage in conciliation efforts. It "afford[ed]" BVA "a chance to discuss and rectify [the] specified discriminatory practice[s]." *Mach Mining*, 135 S.Ct. at 1653. The Commission made a specific offer as to each of the three charging parties. *See* Dkt. 3, Exs. D, E, F. Each offer included both monetary and non-monetary terms. *See id.* As to each, counsel for BVA responded, raising no objection to the non-monetary terms, but making counter-proposals with respect to the monetary terms. *See* Dkt. 3, Exs. G, H, I. The EEOC then reduced the amount of monetary compensation sought for each charging party, but rejected the significantly lower proposals made by BVA. Dkt. 3, Ex. J. BVA did not accept those terms, but offered a modest increase in monetary compensation. Dkt. 3, Ex. K. At this point, BVA also added an additional condition as to one of the charging parties, Earl Ivie, stating that it would only agree to settle if he were to agree to "VOLUNTARILY DISMISS WITH PREJUDICE THE LAWSUIT HE FILED IN CALIFORNIA BASED UPON THE SAME ALLEGATIONS IN THIS MATTER." *Id.*

The EEOC took this request under advisement, but ultimately concluded that it could not settle claims over which it "has no authority to litigate," including Mr. Ivie's claims for disability discrimination, his false imprisonment, his wife's claims, and both of their claims against a number of third parties in their individual capacities. *See* Dkt. 3, Ex. L. After conferring with her clients, counsel for BVA responded that BVA is "not willing to discuss monetary settlement with any of the charging parties without a global settlement of all claims." Dkt. 5, Ex. G. It was only at that point that the EEOC concluded that conciliation was unsuccessful, *see*

Dkt. 3, Ex. M, and subsequently brought this suit, *see* Dkt. 1.

As described by the parties, this process easily satisfied the EEOC's statutory obligation to "afford the employer a chance to discuss and rectify a specified discriminatory practice." *Mach Mining*, 135 S.Ct. at 1653. As the *Mach Mining* decision makes clear, the EEOC is entitled to "expansive discretion . . . over the conciliation process." *Id.* It "need only 'endeavor' to conciliate a claim, without having to devote a set amount of time or resources to that project." *Id.* at 1654. And, its efforts "need not involve any specific steps or measures." *Id.* Most significantly for present purposes, "the EEOC alone decides whether in the end to make an agreement or resort to litigation" and it has the discretion to set the pace and *duration* of conciliation efforts." *Id.* (emphasis added). Here, the EEOC engaged in substantial back-and-forth with BVA but eventually made the decision—which was its alone to make—"when to quit the effort." *Id.*

BVA argues that, despite the EEOC's conciliation efforts, it violated its statutory mandate by failing to continue to pursue settlement with respect to the two charging parties whose claims are at issue in this litigation (Matthews and Martinez) when the parties reached an "impasse" as to a third charging party (Ivie), whose claim is not asserted in the complaint. *See* Dkt. 3 at 11. But it is not at all clear that BVA has correctly characterized what actually happened in the conciliation process. After the EEOC rejected BVA's additional condition of settlement as "untenable," *see* Dkt. 3, Ex. L, BVA's counsel responded that "I have spoken to my clients. They are not willing to discuss monetary settlement *with any of the charging parties* without a global settlement of all claims," Dkt. 5, Ex. G, at 1 (emphasis added).

Thus, BVA's response might reasonably be understood to have conditioned the settlement with any of the charging parties on a settlement with all three. And, in fact, this appears to be how the EEOC understands BVA's position. Dkt. 5 at 16.

The Court recognizes that BVA's negotiation position might plausibly be read less expansively merely to mean that it was unwilling to settle with any of the charging parties unless *that charging party* would agree to "a global settlement of all [of his or her] claims." That is not the most natural reading of the response. But, even more fundamentally, BVA's invitation for the Court to place itself in the shoes of the negotiating parties, to assess how particular proposals should have been understood, to question whether the EEOC should have sought clarification, and to evaluate whether the EEOC ended the conciliation process to abruptly vastly exceeds the type of review contemplated by *Mach Mining*. "[T]he EEOC must try to engage the employer in some form of discussion . . . to give the employer an opportunity to remedy the allegedly discriminatory practice," 135 S.Ct. at 1656, but the role of the courts in policing the conciliation requirement extends no further than that, *see id.* The ADEA does not require or authorize the courts to evaluate "what happened (i.e., statements made or positions taken) during those discussions." *Id.*

Finally, the Court notes that even the evaluation of the administrative record set forth above may exceed what the Court contemplated in *Mach Mining*. Because the parties submitted the actual documents exchanged during the conciliation process and argued the motion based on these materials, and because the ADEA does not incorporate the same confidentiality requirements applicable to Title VII actions, *see* 42 U.S.C. § 2000e–5(b), the Court has addressed the materials that are

before it. The Court recognizes, however, that a less substantial review of the record of negotiations may be sufficient and appropriate. For present purposes, the Court merely concludes that the record is more than adequate to demonstrate that the EEOC has satisfied its statutory duty to conciliate.

### 2. Investigation

BVA also argues that the EEOC failed to "independently investigate" the charges, and that an investigation is—at least impliedly—a mandatory prerequisite to this action. *See* Dkt. 6 at 18–19. The EEOC acknowledges that it is required to "make an investigation" within a specified period of time prior to filing a discrimination suit under *Title VII*. *See* 42 U.S.C. § 2000e–5(b), *see also Martini v. Fed. Nat'l Mortgage Ass'n*, 178 F.3d 1336, 1346 (D.C.Cir. 1999). But it argues that the *ADEA* has no such requirement, *see* Dkt. 5 at 19–22, because it only empowers the EEOC "to make investigations," *see* 29 U.S.C. § 626(a), and does not list an investigation among the requirements to be satisfied "[b]efore instituting any action under this section," *see id.* at § 626(b). In the alternative, the EEOC argues that any pre-suit investigation requirement has been satisfied. *See* Dkt. 5 at 23–24.

█ For the purpose of resolving this motion, the Court will assume that an EEOC investigation, like an attempt to conciliate, is a non-jurisdictional prerequisite to an ADEA enforcement suit. Even with this assumption, however, the Court concludes that BVA has failed to demonstrate that the EEOC did not satisfy that prerequisite. The record establishes that the EEOC gathered information, conducted interviews, reviewed the charges, and issued letters of determination based on the investigative record. *See* Dkt. 3, Exs. A, B, C, (letters of determination); Dkt. 3,

Exs. N, Q (BVA's responses to the EEOC's requests for information). BVA argues that these activities do not rise to the level of "a genuine and independent investigation." Dkt. 6 at 20. But BVA once again fails to identify any statutory language or controlling precedent requiring the EEOC to engage in further investigative efforts. Even if satisfaction of the ADEA's investigation requirement were subject to judicial review, it seems safe to assume that, as in Title VII cases, the role of the courts would not, and ought not, extend to second-guessing quintessentially executive judgments about who to interview or what information to gather in the course of an investigation. *See, e.g., EEOC v. Keco Industries, Inc.*, 748 F.2d 1097, 1100 (6th Cir.1984) ("[T]he nature and extent of an EEOC investigation into a discrimination claim is a matter within the discretion of that agency."); *see also Martin v. United States EEOC*, 19 F.Supp.3d 291, 303 (D.D.C.2014) (holding that the court lacked authority to compel the EEOC to engage in specified investigative activities, because "the scope of an EEOC investigation is wholly within the discretion of that agency").

█ In arguing for closer review, BVA relies primarily on *EEOC v. Sterling Jewelers, Inc.*, 3 F.Supp.3d 57 (W.D.N.Y.2014). That decision, however, recognized that "a district court should not examine the adequacy of an EEOC investigation." 3 F.Supp.3d at 62–64. The issue in *Sterling Jewelers* was whether the EEOC could assert claims it did not investigate at all, *i.e.*, whether it could assert claims of a nationwide practice or pattern of discrimination when it did not conduct a nationwide investigation. *Id.* BVA does not identify any similar mismatch between the charges investigated by the EEOC and the claims asserted on behalf of Ms. Matthews and Mr. Martinez.

In any event, BVA fails to point to any facts supporting its assertion that the EEOC failed to investigate. Its argument that the EEOC merely "deferred to the opinions of the charging parties," *see* Dkt. 6 at 20, is belied by the fact that the EEOC did not pursue all the original charges, *see* Dkt. 3, Ex. A at 1–2 (making no finding on Mr. Martinez's ADA claim); Dkt. 3, Ex. C at 1–2 (making no finding on Ms. Matthews' age-based harassment claim). The fact that the EEOC agreed with the parties on most of the claims, rather than with BVA, does not mean that the EEOC failed to investigate. BVA also argues that the EEOC only interviewed the charging parties. BVA identifies no authority, however, that requires the EEOC to conduct interviews to augment the employer's documentary submissions, *see* Dkt. 3, Exs. N, Q, and BVA has not explained how the failure to conduct such interviews impaired the EEOC's investigation of the charges in any way, *cf. EEOC v. New Cherokee Corp.*, 829 F.Supp. 73, 78–79 (S.D.N.Y.1993) (rejecting a similar argument in an ADEA case, where the employer failed to "suggest any reason that documentary submissions are inadequate when compared to an oral interview").

BVA's contention that the EEOC failed to conduct an "independent" investigation rests primarily on its disagreement with the factual allegations in the complaint. *See* Dkt. 6 at 20 ("The various inaccurate statements as to indisputable evidence in the EEOC's Complaint demonstrate that it did not independently investigate the charges"); *id.* at 21 ("if it had at least reviewed the documents submitted to it by the BVA, the EEOC would not have made this false allegation in the Complaint"). That contention ignores the Court's obligation to view the record in the light most favorable to the non-movant and, even more fundamentally, it asks that the Court take on a supervisory role that has no

basis in the ADEA or any relevant precedent. As BVA has failed to identify any judicially cognizable deficiencies in the EEOC's investigation, there is no basis to conclude that the EEOC has failed to satisfy its pre-suit obligations. BVA's motion must be denied.

### III.  CONCLUSION

As discussed above, conciliation is a non-jurisdictional precondition to suit and, accordingly, is not properly raised in a motion brought under Federal Rule of Civil Procedure 12(b)(1). Moreover, even if BVA's motion is considered under Rules 12(b)(6) and 56, it fails under the "narrow" standard of review adopted by the Supreme Court in *Mach Mining,* which the parties have conceded applies here. Accordingly, it is

**ORDERED** that BVA's motion to dismiss (Dkt. 3) is **DENIED.**

It is **SO ORDERED.**