NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0093n.06

No. 21-3648

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Mar 03, 2022
DEBORAH S. HUNT, Clerk

RED ROOF FRANCHISING, LLC,

    Plaintiff-Appellee,

v.

RIVERSIDE MACON GROUP, LLC;
DEBA SHYAM,

    Defendants-Appellants.

)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF
OHIO

Before: SILER, LARSEN, and MURPHY, Circuit Judges.

MURPHY, Circuit Judge. This case shows the importance of not losing sight of the Federal Rules of Civil Procedure in the heat of trial. Riverside Macon Group contracted with Red Roof Franchising ("Red Roof") to operate a Red Roof Inn. When Riverside did not make required hotel improvements, Red Roof denied Riverside access to its online reservation system. On appeal, Riverside argues that Red Roof breached the contract by failing to give it adequate time to cure its defaults before removing it from this reservation system. But the jury rejected its argument. And to preserve a challenge to the sufficiency of the evidence underlying the jury's decision, Riverside needed to move for judgment as a matter of law under Rule 50. Riverside failed to do so. We thus cannot consider its appellate argument, and we affirm the district court's judgment.

I

It cost an overnight guest just $9.99 to stay at the first Red Roof Inn when it opened outside Columbus, Ohio, in 1973. Since that time, hundreds of these hotels have sprung up across the country. Red Roof now operates through a "franchise" model. It allows independent contractors to run hotels under its "Red Roof Inn" name in return for a fee. Like all trademarks, the "Red Roof Inn" mark allows consumers to differentiate the company's hotels from hotels run by competitors. *See* 1 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 3:1 (5th ed.), Westlaw (database updated Dec. 2021). So an Ohioan traveling in Georgia can stay at a Red Roof Inn in that state confident that the hotel will be of the same quality as the Red Roof Inns the Ohioan knows closer to home. *See id.* § 3.2; William M. Landes & Richard A. Posner, *Trademark Law: An Economic Perspective*, 30 J.L. & Econ. 265, 269–70 (1987). Yet the trademark could not perform this signaling function if franchisees could "free ride" off the mark by enticing customers to stay at their hotel using the Red Roof Inn name but skimping on the amenities that they have come to expect with that name. *See* Landes & Posner, *supra*, at 270. In its licensing agreements, therefore, Red Roof requires franchisees to meet its quality standards.

Red Roof claims that Riverside did not live up to these standards. In February 2014, Riverside bought a hotel in Macon, Georgia, that another franchisee had been operating as a Red Roof Inn. The same month, Riverside entered into a "Franchise Agreement" with Red Roof that allowed it to continue to use the Red Roof Inn name (and other proprietary marks) at this hotel. Agreement, R.67-3, PageID 1283–84, 1294, 1323. The agreement also gave Riverside access to Red Roof's online reservation system. *Id.*, PageID 1286. Through that system, prospective guests can visit a general website to reserve rooms at Red Roof Inns across the country.

In return, Riverside agreed to comply with Red Roof's brand standards and pay various fees. *Id.*, PageID 1283, 1286–93, 1296. In a "Renovation Addendum," Riverside also agreed to substantially remodel the hotel according to a set schedule. *Id.*, PageID 1328–35. Among other improvements, Riverside needed to update the lobby and ensure that guest rooms came with proper bedding, updated bathroom fixtures, and 32-inch flatscreen televisions. *Id.*, PageID 1333–34.

Within two years, Red Roof discovered problems with Riverside's operations. By December 2015, it learned that Riverside had not made improvements required under the Renovation Addendum. That month, Red Roof wrote a letter to Riverside ordering the franchisee to complete these updates (including, for example, the replacement of guest-room draperies and bedding) by the end of January 2016. Letter, R.67-7, PageID 1363–64. If Riverside did not timely finish the improvements, the letter warned, Red Roof would treat Riverside as in "default" of the agreement and consider enforcing its contractual "remedies" for a default. *Id.*, PageID 1363.

Things got worse over the next year. In November 2016, Red Roof sent Riverside another letter providing "formal notice" of default. Letter, R.67-4, PageID 1336. By then, Riverside had fallen behind in paying over $3,000 in fees. *Id.* In addition, Red Roof believed that Riverside still had not completed many improvements, including replacing the bedding. *Id.*, PageID 1343–44. The hotel had also fallen below Red Roof's quality measures. Only half of the surveyed customers who stayed there, for example, suggested that they would recommend it to others. *Id.*, PageID 1337. In its letter, Red Roof noted that it planned to immediately deny Riverside access to its reservation system—a remedy that the agreement authorized in lieu of termination. *Id.* Red Roof also warned that it would terminate the agreement if Riverside did not pay the fees within 5 days and cure the hotel-improvement defaults within 30 days. *Id.*

Despite the letter's warning, Riverside expected Red Roof to give it time to cure its defaults before removing it from the reservation system. Riverside quickly paid the overdue fees. It also believed that it was adequately implementing the required improvements (and claimed to have already made some of the changes that Red Roof flagged in its letter).

Yet Red Roof denied Riverside access to its reservation system shortly after sending this letter. Because potential guests could no longer make reservations at Riverside's hotel through that online system, Riverside's business declined substantially. To make matters worse, Riverside discovered pervasive mold permeating the hotel around the same time. Riverside thus focused on remediating the mold rather than improving the property. It also refused to pay any more fees to Red Roof because it believed that Red Roof had breached the agreement by kicking it out of the reservation system without providing an adequate cure period.

Although the parties attempted to work through their differences, these efforts failed. In May 2017, Red Roof sent another "formal notice" of default to Riverside. Letter, R.67-5, PageID 1345. Riverside then owed over $14,000 in fees, and Red Roof claimed that Riverside had still not completed required improvements. *Id.* Red Roof again warned that it would terminate the agreement if Riverside did not pay the fees within 5 days and make the hotel improvements within 30 days. *Id.*

This time, Riverside did not even pay the fees. So Red Roof terminated the agreement that September. Letter, R.67-6, PageID 1357. It told Riverside to cease using the "Red Roof Inn" name and to remove its trademarks from the property. *Id.* Red Roof also noted that Riverside owed, among other things, over $20,000 in fees. *Id.*, PageID 1358.

But Riverside still refused to pay. Riverside also allegedly continued to hold itself out as a "Red Roof Inn" by keeping the Red Roof Inn signs up and answering the phone as the Red Roof

Inn. While admitting that it had failed to take down some hard-to-remove signs, Riverside claimed that it had otherwise transitioned to operating the hotel as the "River Place Inn."

Red Roof sued Riverside and its owner, Deba Shyam. (We will refer to both defendants as "Riverside" for simplicity.) Red Roof asserted several claims, including breach of contract under state law and trademark infringement under the Lanham Act, 15 U.S.C. §§ 1114, 1125. Riverside responded with counterclaims of its own, including a claim that Red Roof had also breached the agreement.

The district court granted Red Roof a preliminary injunction ordering Riverside to stop holding itself out as a Red Roof Inn. It later granted summary judgment to Red Roof on its trademark-infringement claim and on most of Riverside's counterclaims. But it ordered a trial on the competing breach-of-contract claims and on the amount of Red Roof's trademark damages.

At trial, Riverside alleged that Red Roof had breached the agreement by kicking it out of the reservation system in November 2016 without giving it 30 days to cure its defaults. In response, Red Roof did not dispute that the agreement required this 30-day cure period. It instead asserted that it had provided the required cure period because it had warned Riverside about the defaults way back in the December 2015 letter. Riverside countered with testimony that it could not confirm that it had ever received this 2015 letter. Kluchin Tr., R.80, PageID 1511–12. A Red Roof employee also conceded that he did not have records showing its delivery. Limbert Tr., R.80, PageID 1470–71. But this employee explained that Red Roof sends these types of notices via certified overnight mail as its standard business practice. *Id.*, PageID 1470–71, 1479.

The jury returned a verdict in favor of Red Roof. It found that Riverside had breached the Franchise Agreement but that Red Roof had not. The jury awarded Red Roof $20,700 on its

contract claim and $19,500 on its trademark claim. The district court entered a final judgment for Red Roof in the amount of $40,200. Riverside now appeals.

II

On appeal, Riverside renews its argument—made to the jury—that Red Roof breached the Franchise Agreement by denying it access to the reservation system without giving it time to cure its defaults. But we cannot review the jury's contrary findings directly. And Riverside did not preserve any sufficiency-of-the-evidence challenge to Red Roof's proof at trial by moving for judgment as a matter of law in the district court. Under well-established principles of civil procedure, therefore, we cannot now consider Riverside's challenge.

Those well-established principles start with the Seventh Amendment. It provides: "In Suits at common law . . . the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law." U.S. Const. amend. VII. When this amendment covers a suit, it prohibits courts from setting aside a jury's fact findings except according to traditional common-law principles. *See Gasperini v. Ctr. for Humans., Inc.*, 518 U.S. 415, 432–33 (1996). Yet common-law courts long granted directed verdicts (or judgments notwithstanding the verdict) to a party when the other side presented insufficient evidence to support a fact. *See Galloway v. United States*, 319 U.S. 372, 389–90 (1943); *Balt. & Carolina Line, Inc. v. Redman*, 295 U.S. 654, 659–61 (1935). This procedure comports with the Seventh Amendment because the question whether a party presented sufficient evidence is one of law (for a court), not of fact (for a jury). *See Gasperini*, 518 U.S. at 435; 9B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2522, at 226 (3d ed. 2008); *cf. Google LLC v. Oracle Am., Inc.*, 141 S. Ct. 1183, 1200 (2021). Federal Rule of Civil Procedure 50 has since codified this limit on a litigant's right to have a jury resolve factual claims.

Before a case goes to the jury, the rule permits a party to move for judgment as a matter of law on an issue if a reasonable jury would not have "a legally sufficient evidentiary basis" to find for the opposing party on the issue. Fed. R. Civ. P. 50(a). And if the court does not grant this motion, the party may then renew the motion after the jury's verdict. Fed. R. Civ. P. 50(b).

On appeal, then, a circuit court does not review the jury's factual findings. *See Maxwell v. Dodd,* 662 F.3d 418, 420 (6th Cir. 2011). Rather, it reviews a legal question that does not implicate the Seventh Amendment: Did the district court properly deny judgment as a matter of law under Rule 50 because sufficient evidence supported the jury's verdict? *See Neely v. Martin K. Eby Constr. Co.*, 386 U.S. 317, 319–22 (1967). This distinction is critical. It means that parties must seek the district court's resolution of any sufficiency-of-the-evidence questions by filing (and renewing) a Rule 50 motion at the proper times. *See Hanover Am. Ins. Co. v. Tattooed Millionaire Ent., LLC*, 974 F.3d 767, 779–90 (6th Cir. 2020); *Maxwell*, 662 F.3d at 420–21. If a party fails to do so, the party cannot raise such a challenge on appeal. *See Ortiz v. Jordan*, 562 U.S. 180, 189 (2011); *Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394, 403–05 (2006).

These principles resolve this case. On appeal, Riverside raises a sufficiency-of-the-evidence challenge in all but name to the jury's verdict that Red Roof did not breach the Franchise Agreement. At trial, the parties agreed that the contract entitled Riverside to a 30-day window to cure any default before Red Roof could remove it from its online reservation system. They also agreed that Red Roof removed Riverside from this system in November 2016. They disputed only whether Red Roof had provided the required 30 days' notice to Riverside before this time. Red Roof claims that it provided this notice in the December 2015 letter alerting Riverside of its defaults. According to Riverside, Red Roof did not present sufficient evidence at trial to establish that it sent this letter using a method authorized by the agreement. But Riverside did not move for

judgment as a matter of law on this issue under Rule 50(a) or renew such a motion under Rule 50(b) after the jury's verdict. We thus may not consider its sufficiency challenge. *See Maxwell*, 662 F.3d at 420–21.

Indeed, Riverside does not offer a response on this procedural point. Although Red Roof raised the point in its appellee's brief, Riverside did not bother to file a reply brief. Its silence speaks volumes.

We affirm.